IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN HART | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 13-cv-6661 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

**MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**                                                      September 20, 2017

*Pro se* plaintiff John Hart brings this action under 42 U.S.C. §1983. He alleges violations of his constitutional rights during an approximately four year period of incarceration within the Philadelphia Prison System ("PPS"). In his Second Amended Complaint, plaintiff generally complains about, *inter alia*, conditions he experienced during his incarceration at the Curran-Fromhold Correctional Facility ("CFCF") and at the Philadelphia Industrial Correction Center ("PICC"), retaliation by corrections officers, false misconducts issued against him and baseless findings of fact made by disciplinary hearing examiners. (ECF 52, ¶ 90.) Named as defendants are the City of Philadelphia, and a number of individuals in their official and individual capacities, who plaintiff alleges are employees of the PPS, including Louis Giorla, the Commissioner of PPS, John Delaney, the Warden of CFCF, Michele Farrell, the Warden of CFCF, William Lawton, the Warden of the PICC, Karen Bryant, the Warden of PICC, Christopher Thomas, the Director of Records at CFCF, Bruce Herdman, Chief of Medical Operations of PPS, Sergeants Annceleste Gangemi and Sohail Akhtar of CFCF, CFCF Correctional Officers Jheovannie Williams, Natalia Baptiste, Ronald Eure, Ramel Young, Deidra Thornton, PICC Directo of Security

1

Gerald May, PICC Correctional Officer Joseph Murray, Correctional Officer Charles Harmer, a hearing examiner for PPS, Correctional Officer John Doe #1, a hearing examiner for PPS, Correctional Officer John Doe #2, a hearing examiner for PPS and Correctional Officer John Doe #3, a mail officer for PPS (collectively, the "City of Philadelphia defendants"). Also named as defendants are Sheila Bedford, the Bail Commissioner of the City of Philadelphia, Aramark Correctional Service, Inc., Corizon, the health care provider for the Philadelphia Prison System and James Arnone, a doctor involved in plaintiff's medical care at CFCF. Defendants Bedford, Arnone and Aramark were dismissed by prior Orders (ECF 69, 85, 88) Presently before the Court is the motion of the City of Philadelphia defendants motion to dismiss for failure to state a claim. For the reasons that follow, the motion is granted.

A motion to dismiss for failure to state a claim tests the sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6); *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In evaluating a motion to dismiss, the court must view factual allegations in a light most favorable to the plaintiff, drawing all reasonable inferences therefrom. *Buck v. Hamilton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2002).

The United States Supreme Court has established a two-part test to determine whether to grant a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). First, the court must ascertain whether the complaint is supported by well-pleaded factual allegations. Iqbal, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, 550 U.S. at 555. In turn, these factual allegations must be sufficient to provide a defendant the type of notice contemplated in

Rule 8. See Fed. R. Civ. P. 8(a)(2) (requiring a short and plain statement of the claim showing the pleader is entitled to relief); see also *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

Taking the well-pleaded facts as true, the court must then determine whether the plaintiff is "plausibly" entitled to relief. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). That is, the pleadings must contain enough factual content to allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. In short, a complaint must not only allege entitlement to relief, but must also demonstrate such entitlement with sufficient facts to push the claim "across the line from conceivable to plausible." *Id.* at 683; accord *Holmes v. Gates*, 403 F. App'x 670, 673 (3d Cir. 2010).

Defendant the City of Philadelphia moves to dismiss the Second Amended Complaint against it on the basis that plaintiff has failed to adequately plead a *Monell* claim.

Local governments and political subdivisions are not immune from damages liability for claims brought under § 1983. *Owen v. City of Independence*, 445 U.S. 622, 657 (1980). However, a local government is only subject to § 1983 liability where the local government tself causes a constitutional violation. *Monell v. Department of Social Services of City of N.Y.*, 436 U.S. 658, 694 (1978). That is, a local government cannot be held liable under § 1983 simply because of the actions of one of its employees. *Id.* (expressly rejecting municipal § 1983 liability based on a *respondeat superior* theory).

A municipality can be held liable under § 1983 only when the implementation of an officially adopted policy or an informally adopted custom causes the alleged

**3**

constitutional violation. *Mulholland v. Gov't Cty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013). In the absence of an official policy, a course of conduct can be considered a custom when municipal officials' practices are "so permanent and well settled as to virtually constitute law." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). In either instance, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz,* v. *Dubinon,* 915 F.2d 845, 850 (3d Cir. 1990).;*see also Andrews,* 895 F.2d at 1480.

In his Second Amended Complaint, plaintiff alleges, in conclusory fashion, that the City of Philadelphia has a custom, policy or practice of:

a. assigning public defenders to represent defendants at bail hearings who don't qualify for, nor request, such representation;

b. raising or revoking defendants' bail without due process of law;

c. subjecting inmates to dangerous, severely overcrowded, degrading, cruel, and unsanitary conditions, both in the holding cells of the police districts and within the jails of the Philadelphia Prison System, in violation of the First, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution;

d. failing to employ the requisite amount of correctional officers in the Philadelphia prisons;

e. failing to provide various inmate services and programs in the Philadelphia Prison System, including, but not limited to, social worker access, law library access,

4

religious services, family visits, telephones, and recreation because of correctional staffing shortages;

      f. delaying the release of inmates from the Philadelphia Prison System who have satisfied all conditions of bail;

      g. failing to provide adequate medical care for the inmate population of the Philadelphia Prison System by hiring Defendant Corizon as its health care provider which cuts costs for medical services and medication in order to increase its profit margin;

      h. failing to provide nutritionally adequate meals for the inmate population of the Philadelphia Prison System by hiring Defendant Aramark which cuts costs for food - services in order to increase its profit margin;

      i. failing to provide adequate telephone services for the inmate population of the Philadelphia Prison System by contracting with Global Tel Link, Inc. which routinely disconnects phone calls, overcharges for services, and charges for services not rendered;

      j. placing inmates in administrative segregation without due process of law;

      k. subjecting inmates in administrative segregation and pre-hearing segregation to the same conditions of confinement as those in punitive segregation without due process of law;

l. conducting disciplinary hearings against inmates and subjecting inmates to punitive segregation without due process of law;

m. failing to adhere to court orders and subpoenas;

n. violating the attorney-client privilege by precluding inmates from receiving legal visits, reading inmates' legal mail, prohibiting inmates from receiving legal mail, prohibiting inmates from making legal calls to their attorneys, storing outgoing legal mail in unsecured locations accessible to other inmates and staff, and photocopying inmates' legal mail;

o. failing to answer grievances thereby denying inmates of the ability to exhaust their administrative remedies pursuant to the requirements of the Prison Litigation Reform Act;

p. retaliating against inmates who report violations of the rules and regulations of the Philadelphia Prison System, who assert their constitutional and due process rights through the grievance process, and who file lawsuits against employees of the Philadelphia Prison System.

(ECF 52, ¶ 94.)

Plaintiff provides no factual detail to support his generic statements. He fails to set forth any factual allegations referencing the conduct, time, place and persons responsible for any official municipal policy or custom. Plaintiff's theory appears to be that since he was the victim of alleged unconstitutional conduct by the individual defendants, the City of Philadelphia must have automatically had a custom, policy or

practice in place that gave rise to the purported unconstitutional conduct. Plaintiff does not allege that any other inmates were affected by these alleged policies and customs. Plaintiff simply provides no factual averments that would plausibly show that the City maintained any of the policies or practices alleged by plaintiff. Plaintiff's allegations amount to a mere recitation of the required elements required to bring forth a *Monell* claim and are insufficient to survive a motion to dismiss.

Plaintiff also fails to allege that an official who has the power to make policy is responsible for any of the alleged policies or acquiesced in a well-settled custom. *See McTernan v. City of New York*, 564 F.3d 636, 658-59 (3d Cir. 2009). Plaintiff merely alleges that "Defendants City of Philadelphia, Louis Giorla, John Delaney, Michele Farrell, William Lawton, Karen Bryant, Christopher Thomas, Bruce Herdman, …. C.O. J. Williams, C.O. N. Baptiste, Sgt. Gangemi, C.O. Ronald Eure, Sgt. Akhtar, C.O. R. Young, C.O. Thornton, Major Gerald May, Lt. Joseph Murray, Hearing Examiner Harmer, Hearing Examiner John Doe #1, Hearing Examiner John Doe #2, Mail Officer John Doe #3 . . . either carried out these policies, failed to implement policies to protect Plaintiff against the violation of his constitutional and due process rights, or were deliberately indifferent to the violation of his constitutional and due process rights." [ECF 52, ¶ 95.] Plaintiff does not allege whether any of these individuals were decision makers and, even if they were, for which specific polices or customs alleged in paragraph 94 each alleged decision maker was responsible. Therefore, the motion to dismiss will be granted as to the City of Philadelphia.

Defendants John Delaney and Bruce Herdman move to dismiss the Second Amended Complaint as to them on the basis that plaintiff has failed to make any factual

7

allegations of personal involvement against them. The Court agrees and the Second Amended Complaint is dismissed as to defendants Delaney and Herdman. *See Rode v. Dellarciprete*, 845 F. 2d 1195, 1207 (3d Cir. 1988).

Defendants Giorla, Lawton and Farrell move to dismiss the Second Amended Complaint as to them on the basis that plaintiff has not alleged any facts demonstrating personal involvement by any of them in any unconstitutional conduct.

With respect to Commissioner Giorla, plaintiff alleges that Giorla failed to respond to numerous appeals made by plaintiff following denial of grievances filed by plaintiff. (ECF 52, ¶¶ 41, 42, 49, 61, 63, 64, 66, 69, 71, 87) as well as to a letter sent by plaintiff (*Id.* ¶ 47.) However, "a prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the personal involvement required to establish the deprivation of a constitutional right." *Simonton v. Tennis*, 437 F. App'x 60, 62-63 (3d Cir. 2011) citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207–08 (3d Cir.1988)

With respect to PICC Warden Lawton, plaintiff alleges that Lawton denied his request for a tamper-proof bottle of skin lotion, never responded to an appeal regarding a misconduct, plaintiff received and denied plaintiff's appeal of a hearing examiner's order. (ECF 52, ¶¶ 51, 55, 68.) None of these allegations allege the requisite personal involvement to state a claim for relief.

The only allegation that plaintiff makes regarding Warden Farrell is that in responding to an appeal plaintiff filed regarding his mail, Farrell "erroneously stated that the tracking number on certified mail indicates when it is received by the post

8

office prior to arriving at the institution." (*Id.* ¶ 87.) Again, as this claim only involves Farrell's secondary review of a plaintiff's grievance, it is not actionable. The claim also fails to allege any intentional wrongdoing on the part of Farrell.

Defendants Baptiste, Gangemi and Thornton move to dismiss the Second Amended Complaint as to them on the basis that the filing of false misconduct charges are not actionable under 42 U.S.C. § 1983. In addition, defendants Williams, Akhtar, Thomas and May seek dismissal of the filing of false misconduct charges against them.

Plaintiff alleges that these defendants issued five false misconducts against him. (ECF 52, ¶¶ 54, 57, 67, 74, 80.) However, plaintiff also alleges that he received a disciplinary hearing to contest the alleged false misconducts. (*Id.*, ¶¶ 55, 58, 68, 77, 81) "[W]here the prisoner is provided due process, no constitutional violation results from being falsely accused of a misconduct." *Bradley v. Miller*, 2015 WL 6757022, at *7 (W.D. Pa, Nov. 5, 2015). Therefore, the Second Amended Complaint will be dismissed as to defendants Baptiste, Gangemi and Thornton and the false misconduct allegations will be dismissed as to defendants Williams, Akhtar, Thomas and May.

Plaintiff also claims that during his incarceration at PICC, defendant Murray, at defendant May's direction, ransacked plaintiff's cell and destroyed his property, served him with a misconduct and escorted him to punitive segregation (ECF 52, ¶ 75) Plaintiff also alleges that May was involved in directing his transfer to CFCF. (*id.*)

In *Hudson v. Palmer* 468 U.S. 517 *(1984),* the Supreme Court held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the

Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." 468 U.S. 517, 533, (1984). Claims for damage to the personal property of an inmate fail to state a claim under the Due Process Clause when prison grievance processes or state tort law actions provide an inmate with meaningful post-deprivation remedies. *Washington v. Grace,* 445 F. App'x 611, 616 (3d Cir.2011) (citing *Hudson* 468 U.S at 533. Here, plaintiff had post-deprivation remedies available to him such as the Prison grievance process and a state tort action. Accordingly, he cannot state a claim for relief as to these allegations and therefore these claims will be dismissed with prejudice.

Nor do plaintiff's claims that he was transferred to punitive segregation or transferred to CFCF raise a §1983 claim. "Neither the Due Process Clause nor the laws of Pennsylvania give a convict a protected liberty interest in remaining in any particular housing status, in any particular state prison, or in any particular housing area within a state prison. The Supreme Court has consistently held that a convict does not have a Fourteenth Amendment liberty interest in a particular housing location or custody level while under the jurisdiction of correctional authorities." *Nichelson v. Redwine*, 2000 WL 1599246, at *2 (E.D. Pa. Oct. 26, 2000). Accordingly these claims against defendants Murray and May are dismissed.

Plaintiff claims that defendants Eure, Akhtar and Young destroyed his legal documents. (ECF 52, ¶¶ 69-72). Plaintiff's claim that his legal documents were destroyed should be analyzed as a claim that his right of access to courts under the First and Fourteenth Amendments was violated. See *Lewis v. Casey,* 518 U.S. 343 (1996).

Under *Lewis,* in order to prevail on an access to courts claim, the plaintiff must show that he suffered "actual injury" due to the interference with his right of access. *See also, Oliver v. Fauver,* 118 F.3d 175 (3d Cir.1997) (holding that interference with prisoner's mail did not violate his right of access to courts without a showing of actual injury). Examples of "actual injury" given in *Lewis* include a court dismissal of a complaint and an inability to even file a complaint. 518 U.S. at 351, Since, plaintiff has failed to allege that he suffered an "actual injury" as the result of the alleged destruction of his legal papers, this claim must also be dismissed.

Plaintiff also claims that defendants Correctional Officers Williams, Baptiste, Thomas, PICC Warden Bryant, and May, the Director of Security at PICC, took retaliatory actions such as issuing plaintiff misconducts, terminating his employment at the law library, keeping him in punitive segregation for an additional five days and transferring him to back to CFCF were in retaliation for naming them as defendants in this lawsuit. (ECF 52, ¶¶ 54, 56, 58, 62, 65, 76, 82, 83.)

To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) "he suffered some 'adverse action' at the hands of prison officials," and (3) "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take that action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citation omitted).

Even assuming, *arguendo*, that plaintiff has satisfied the first two elements, plaintiff has not made any allegations that his constitutionally protected conduct was an actual substantial or motivating factor for the retaliation. Moreover, the fact that plaintiff

may have engaged in constitutionally protected activity and was subsequently disciplined or subjected to routine prison administrative procedures does not set forth a claim for retaliation. If that were the case, any plaintiff who files a lawsuit and is later disciplined could set forth a claim for retaliation.

With respect to Correctional Officer Harmer, plaintiff's allegations that Harmer, as the hearing examiner, found him guilty of two separate misconducts and sentenced him accordingly, (ECF 52, ¶¶ 77, 81), simply do not amount to constitutional violations. Even accepting plaintiff's allegations as true, Harmer simply engaged in conduct which was directly related to his duties as hearing examiner at CFCF. Such allegations are not actionable.

Finally, plaintiff's allegations against PICC Warden Bryant fail for the same reasons as those described above. Plaintiff contends that Bryant affirmed a finding that he was guilty of a misconduct, failed to respond to an appeal he filed, and was involved in directing his transfer to CFCF, (*id.,* at ¶¶ 76, 78, 81, 83). As discussed, *supra*, such conduct does not amount to a constitutional violation by Bryant. *See Simonton,* 437 F. App'x at 62-63; *Bradley*, 2015 WL 6757022, at *7; *Nichelson,* 2000 WL 1599246, at *2.

For all the foregoing reasons, the motion of the City of Philadelphia defendants to dismiss is granted.